May it please the Court. My name is Gene Wilshire. I represent the appellant, Uretek USA, Inc. There is really, in my view, only one issue in this case. And that is whether or not when Uretek represented in the marketplace that its patented processes were necessary in order to do certain types of pavement lifting and repair. Did that, of necessity, disparage the processes of its competitors? I looked on page 5 of your brief. I'm sorry, Your Honor. On page 5 of your brief, you summarize the allegations that Applied made. On page 5 of your brief, you summarize the allegations that Applied made in its counterclaim. Yes, ma'am. Is that your best statement of what Applied alleged? I believe it is. I believe that that fairly summarizes the . . . When you look at the counterclaim and the answer, it's a little bit redundant. They keep saying the same thing over and over again. But if you take a look at paragraph 14 of the answer, they say that the processes that Applied Polymerics was using at that time was violating the patent in work it was doing for the Virginia Department of Transportation. Again, in the counterclaim, when they say that, Uretek had represented to VDOT and other roadway repair jobs that, again, its processes were needed in order to do the work that was out for bid. And it seems to me that the fundamental argument that I hear from Continental is, well, nobody ever used the word disparage. But, again, we know that you don't have to use the word disparage if the facts alleged amount to disparagement because, under Texas law, we're simply not looking at cubbyhole causes of action. We're looking at whether or not the facts alleged give rise to a defense to a claim of some sort that could lead to damages. Now, repeatedly, it seems to me, more example, paragraph 16, paragraph 18, and paragraph 30 of Applied's counterclaim, they repeatedly say that these representations that our patent was needed in order to do this work cost them contracts, cost them money. I see a direct correlation in the nexus there between what they're claiming Uretek was saying in the community and damages that they were claiming in the counterclaim. I just respectfully disagree with Judge Ellison below, who is a fine trial judge and one of my favorites, frankly. But he says on page 4 of his opinion, the court agrees with Continental that deceptive statements regarding the scope of the 831 patent cannot be described as disparagement. Well, I disrespectfully disagree because that statement is saying to the potential customer, Applied Polymerics cannot do this work lawfully because it will infringe my patent. The two cases that Judge Ellison relied upon, primarily the KLN case out of the San Antonio Court of Appeals, which is a case that Continental has routinely relied upon, is totally different on its facts. That's a situation in which the allegations amounted to a theft of trade secrets. In that case, there was no question. In that case, the defendant obtained information about a movable bed, a collapsible type of bed that could be used in the barracks of the United States Navy. And basically, the allegations were they copied it and then submitted their own bid with another bid. But if you're copying something, by definition, you're not disparaging the product. You're actually honoring it. So I'm going to do the same thing. You're honoring the product. But if you say that, there's no allegation there that if my competitor, KLN, submits a bid, they will, of necessity, violate my patent. I've said something altogether different. Didn't Allied take the position throughout its counterclaim that your client, that your tech, knowingly violated the patent? Well, I think where that's going is to the issue of whether or not an exclusion applies. If we knowingly made a misrepresentation or if we knowingly made these statements, and that goes to an exclusion that Continental has cited both in the court below and in this court. But the problem with that argument is, and why that is not important in my view, is that the Lanham Act cases, Lanham Act cases can be proven without willful or intent. You just have to show that the statement was made and the statement's wrong. What's your best? It looked to me like their answer was alleging concerted scheme misconduct, all intentionality, that they don't actually make a recklessness or negligence claim. Is that wrong? Well, it's included. It is included? What I'm saying is this. The American Assurance case out of this court says that if a claim can be made without showing intent, then the exclusion doesn't apply even if you have alleged that it was done willfully. And that's consistent with the Bay case out of the Northern District of Texas, and I believe it's completely consistent with Texas law, that if I make the broadest allegation I can make, I can still recover by simply showing that the Lanham Act has been violated. The district court didn't reach the exclusion. Did not reach that. It did not address that issue. I mean, at a conceptual level, KLM — well, let me start this way. Your position is that Judge Ellison's error was just one of not reading the pleading. You're not saying he misunderstood the law. Is that fair to say or is that an overstatement? In other words, you think KLM can be distinguished. He cites approvingly Hartford and Amerisher, so he understands the distinction, but you're saying he overlooked the point at pages 4 and 5. I think that's right. I think that's correct. I mean, he certainly — I mean, the law in this area, this court's written on it time and time again. Texas courts have written on it time and time again about their duty to defend. So, yes, I mean, he set out the parameters of the law, I think, correctly. But there has to be a line somewhere, you know, in thinking about this case. There is a line where if a competitor says mine's the best, by implication that disparages anybody else. But you wouldn't say that that's a disparagement. I think the distinction that I would draw here is that when I say my widget is the best widget, I haven't said this widget over here won't work. I haven't said this widget over here is defective. And you're saying when you look at paragraphs 14, 15, 21, 22, it was a direct targeting of applied. The allegation was that Eurotech targeted applied and told its customers what they're doing is illegal. I think that's essentially correct, yes. And if that's what they allege, that falls right into his acknowledgment. That's your position. That's right. That is disparagement. Now, I don't want to sound too technical, but one response is, well, it never even refers to applied. It's just boasting about its product. We've got the only patent here. If anybody else did that project, the VDOT project, they'd be infringing it. And so we're not disparaging people. We're just saying we're the best. That's KLN. We have the best Navy beds. It flatters people to imitate them, but we're the best, no? I just definitely see a complete distinction between saying that I'm boasting and saying that my competitor can't lawfully do this job. And that's the Amerisher case in New York. That's the Amerisher case out of New York? And to me, it's just very clear. Well, even Judge Ellison said if we'd used the word they're infringing, he would have found that we'd disparaged them. But I can't see the distinction between saying that I have a patent, which therefore I'm the only person that can do this, which by absolute necessary implication says polymerics can't do this work. They don't have the ability to use the processes that your bid requires. Because that is precisely what they're saying. If instead paragraph 14 had said on information and belief, plaintiffs have falsely said they have a patent that covers all this paving work, all of it, with no reference to the VDOT contract, no reference to apply, just said we have the field, would that be enough to disparage any and all possible competitors? Well, I think— It gets closer. Let me be sure I understand your question. Would that be enough to disparage every competitor in the market? I believe it does. I believe it does. Because you're saying no other competitor can do this work. So by implication, if they are, they're violating the law. That's correct. Yes. And they can't lawfully and appropriately do this job. And that, to me, encapsulates what this case is about. A few moments ago, when I read the part of the opinion, in my view, to me, the answer to his question is, yes, I did. I did disparage my competitors' work. So I don't—I believe that this is a pretty straightforward case, that if Judge Ellison is correct, that the deceptive statements as to the scope of the patent, okay, everybody agrees that it makes that allegation. If I have then alleged that my competitor can't do the work, it seems to me that I have, without question, disparaged it. If there's disparagement, there's a nexus to prove damages, and we've got a claim alleged under the Lanham Act that can be proven without showing intentional misconduct or willful violation, then that's a claim that falls within the specific terms of the disparagement provisions of the insurance policy that everybody admits was in place and in effect, and I believe that my client was entitled to a defense. So if I have no further questions, I'll close at this time on my opening. Thank you. May I please report? My name is Claudia Frey, and I represent Continental Casualty Company. In response to opposing counsel's argument, I'd like to just very briefly revisit— Can you speak up? I'm sorry. In response to opposing counsel's argument, I'd like to briefly revisit the Texas rules on interpreting the duty to defend, and then after that, walk through the allegations in the underlying pleadings and explain why they don't meet the policy requirements in order to trigger a defense. It's true that in Texas, the courts initially, in evaluating the duty to defend, in Hayden Newport said, anytime the pleadings must be interpreted liberally, and if they raise the potential for coverage, then this must be interpreted in the favor of insured, and when there's a potential for coverage, there must be a defense. This rule, taken to its extreme, could lead to a defense in almost any situation because a creative mind can find a potential anywhere. That's probably why the Supreme Court circled back to the issue later in National Union v. Merchants and Pine Oak and put some limitations on this potentiality standard, saying, yes, the pleadings are interpreted liberally. However, you can't go to the extent of imagining facts or imagining hypotheticals or reading facts into pleadings that aren't in the pleadings, and as this court said a few years ago in Gilbane, you also don't have to, you cannot find a defense where there's a cause of action or a set of facts that might have been asserted, but for some reason were not asserted. That, you know, that pretty much summarizes the present case, and I understand, you know, opposing counsel's frustration with this pleading because as you read the underlying pleading, you can see that there's an unpleasant and competitive and difficult tension between these two competitors, and it's easy to imagine that at some point in all these dealings, there could have been some disparagement. It's easy to read the pleading and think, I wouldn't be surprised if there was disparagement because look at the way that these competitors were talking about each other in the marketplace. However, there is no specific allegation of disparagement. It's not just the lack of the word. There's no allegation of a specific statement made about Applied that reduced, you know, that in the public or its competitors' images reduced the value of its products or services. This statement that the work was potentially covered by the patent, by this 831 patent, again, that's just puffery. That's just an exaggeration of the value of the patent. Why isn't that an allegation of patent infringement? Because the fact that a patent should be used or applied or would be more helpful or the better way to build a road is not necessarily a statement that the other company is using the patent. It's possible that they came up with this new patented process, and they were going around the marketplace saying, you know, you'd really be needing to use our patented process. It's better. It's a great way to construct roads. Do you need it for everything these people are doing? That's not necessarily a statement that those people are actually at the time conducting work that uses the process that's in this patent. And, for example, the VDOT contract is a very good one. This Virginia Department of Transportation contract, if one goes through the entire pleadings, reads them as a whole, there was a, Applied entered into this contract with the Virginia Department of Transportation to do some roadway work. And at some point there was a discussion between Eurotech and Applied about the scope of Eurotech's patent and the work that was being performed under the VDOT contract. Eurotech actually went out and looked at the work that was being performed under the VDOT contract, examined the scope of the performance, and came back and gave some kind of verification to Applied that the patent was not implicated in the work that Applied was doing under the VDOT contract. So, in other words, this was a situation where Eurotech thought its patent might be implicated. It went and checked. It found that its patent wasn't implicated. For some reason, down the road, apparently Eurotech changed its mind because it turned around and it brought a lawsuit accusing Applied of patent infringement. If the story were just that, that were the narrative, then it would seem like that is Ellison's approach to the case. But then when he rhetorically asks to the specific portion that the opposing counsel keeps highlighting for us, Judge Ellison says, if Applied had alleged Eurotech told customers, Applied customers, that Applied had infringed the 831 patent, the court would agree. And he cites Amerisher. So that makes me think everyone's in agreement on the law. He just says that's not what was alleged. But then you look at 14 and 15. Plaintiff falsely misrepresented, not to you directly, but to your customers, that 831, the exact same patent, covered their project. It seems to be precisely what he said would have been sufficient. What's lacking, though, is the allegation that the 831 process was being used on the specific contract. I thought when you get to 21 and 22, that gets pretty clear, right? In other words, plaintiffs knew explicitly, you say it very conclusively, that Applied was doing the work on that particular roadway, and it didn't infringe the patent. And therefore, nonetheless, knowing that it wasn't infringing, you claimed that Eurotech continued to sort of their innuendo, and it was baseless, and it was chilling our competition because you were discouraging our customers. You were saying not ours is better, but you were saying theirs is illegal. Except that there's no allegation that they ever came out and said that. But it says they said it to our customers, not to the lawyer. But what was told to the customers is that the patent is so broad that these projects come within the scope of the patent. But that's not the same as saying it's broad, these projects come within the scope, and your guy is using it right now, and that's illegal, that infringes the patent. That doesn't feel logical to me. If the project necessarily covers the patent, and someone is engaging in the project, and you're saying that they're using the patent illegally, I don't see any way around that. Well, there are ways around it because there are many scenarios where they might not be infringing the patent. I mean, for instance, the project could have just been started, and they could be saying ultimately at some point they're going to need our process. Well, they're not in the process of patent infringement at the present time. Or perhaps it's a situation where the company that has the process really believes that its process is probably necessary and the work can't be performed properly without its process, but the contractor may be doing the work in a different way, not using the process. So it may be your tech's opinion that its process is so great that no one can build a road without its process. It may be Applied's opinion that it can build a road just fine using its own processes and not Eurotech's processes. So the fact that Eurotech is saying, hey, you need my process to build a road, doesn't mean that every contractor out there has the same belief and is actually using that process to build the road. It's very simple. It seems to me, but your allegation, maybe deservedly, was very direct as to intentionality. They were deceiving people into thinking that they had the exclusive right and anybody else, including us, on this particular project even, was acting illegally. So I have a hard time understanding the logic point that that doesn't disparage, but it also, therefore, where I move is where the district court didn't have time to get to, which is, isn't that allegation one of intentionality that fits into one of your exclusions? It would help me if you could, when he cites American insurance, do you agree with that proposition, that if the pleadings alleged exclusively intentionality? Well, if there is a direct statement made to a customer that the insured is, that the plaintiff is specifically acting or selling a product in a way that illegally infringes a patent, then there is the potential for coverage, which is what Judge Ellison said. But would that then fit in one of your exclusions or not? Yes, it would fit within an exclusion. But he cited this case, American Insurance, saying that it wouldn't. As long as the Lanham Act contemplates, what's your thought on that? Oh, I understand your question. Yes, so we're speaking about the knowing violation of rights exclusion. And the knowing violation of rights exclusion, in certain Lanham Act cases, there are pleadings where there aren't specific or clear allegations of intentionality. So the Lanham Act doesn't necessarily require willfulness. So if there's a pleading that alleges violation of the Lanham Act without more detail on the intentionality, then there's no basis for applying the exclusion on the duty to defend because there's a possibility that there's liability under the Lanham Act without intentionality. However, as the Southern District Court said in the Birmingham case, which was affirmed by this court, when you have pleadings that have specific and clear allegations of intentionality and that describe a motive and a fact pattern that can only be read to involve intentional conduct, then the question of whether the Lanham Act requires intentionality or not is sort of a moot point because the fact is there is intentionality alleged in the pleading. So in the present case, much like in the Birmingham case, plaintiffs allege that there's a pattern and practice of misrepresenting, that the purpose of these misrepresentations is to destroy competition in the marketplace, to chill and prevent competitors from attaining bids. And this is exactly the damage that is alleged to have happened. It's stated on multiple times that Eurotech acted with knowledge that it was exaggerating the scope of its patent. It knew it was exaggerating the scope of its patent. It knew it was causing harm in the marketplace, and it continued to do so because its very intent was to cause harm in the marketplace. Now, I would like to point out that in many of the cases where there's some question of intent, there are alternative allegations. So there's an allegation that the defendant acted intentionally or knew or should have known that his conduct was, you know, intentional or improper. There's no such allegation of alternative conduct anywhere in the underlying pleading other than in one place. In paragraph 22 on page 330 of the Record on Appeal, there was an allegation that Eurotech knew or should have known that the VDOT contract didn't infringe the patent. And this is the only place in the pleading that the words knew or should have known are included. Anywhere else in the pleading, there is no alternative allegation. In other words, the plaintiff is saying very specifically, I'm not saying they knew or should have known. I'm saying they knew what they were doing, they intended to cause the harm, they caused exactly the harm that they intended to cause, and all of this should be put to a stop. This alternative allegation with respect to the VDOT contract doesn't affect the analysis because at the end of the day, there are no damages sought with respect to the VDOT contract. So it's, you know, if the VDOT contract is being talked about, it's in play in this case because of the claim of patent infringement related to the VDOT contract that's also at issue in the underlying lawsuit as a separate matter. So once the VDOT contract is taken out, there's no uncertainty in any of the underlying allegations. Everything was done with motivation. So both the knowledge of the exclusion for conduct committed with knowing violation of the rights of another and the exclusion for materials published with knowledge of their falsity come into play. The false statement that Eurotech allegedly made in the underlying lawsuit is the statement that its patent is so broad that the scope of its patent, you know, encompasses these other roadways. This is, in essence, the only false statement that is truly at issue in the underlying pleadings. And in multiple places it states very clearly that Eurotech knew that it was misrepresenting the scope of its patent. It had been told by the Kansas Department of Transportation and others that its patent was dubious and it was overstating the scope of its patent. It knew that it was chilling competition in the marketplace, and yet it continued to make these statements. So this is a clear pleading of defamation committed with knowledge of falsity. Now, it's true, not every allegation of defamation will be excluded on this basis because sometimes, you know, there are lawsuits for defamation that involve recklessness or, you know, potentially false statements made without the knowledge of their falsity. However, this isn't a case where that interpretation can be reasonably given to the pleadings since the motive, not just the knowledge, but the motive for making false statements is clearly enunciated in the pleadings. Back on the first question. Does the Ninth Circuit Judge Liu's decision in Hartford, do you agree with his analysis? The Hartford versus? Yes. Is that comprehend Texas law, the two sit comfortably together? Yes. Yeah. Yes, they do. Absolutely. And, you know, the comment that the judge made in Swift, which I think you paraphrased earlier on, which is there cannot be defamation in this context where one competitor is puffing his product or his services in relation to— His own services rather than denigrating another's. Exactly. Because otherwise, every statement that a competitor made about the superiority or the high quality of his service or processes or patented patents would potentially cause, you know, trigger a defamation claim on the other side. So there must be more than an allegation that our product is superior. In Swift, the court said, you know, well, yes, saying your product is superior, I guess other people might deduce from that that the other company's product is inferior. But if there is no actual statement, you know, not only our product is inferior, but these guys, let me name them, their product is inferior, that's a very different situation. It just comes down to specificity. Well, question. So— Yes. Ours is best. We can't say then that would comprehend everything. Ours is best and theirs is a knockoff or inferior. Again, not denigrating, although closer. Ours is best and theirs is illegal. That sounds to me more like amateur and that that would be denigration or degradation or disparagement. Well, yes. I would agree if there's an overt statement because I think that, you know, the words illegal and infringement, I mean, those words create, you know, just a certain reaction even to me personally. If someone comes up to me and says someone is doing something illegal, there's sort of a visceral reaction to that word. Well, that's a problem, you know, a bad person or company, they're doing something wrong there. But if someone comes up to me and describes a situation where they don't specifically state that the other person is engaging in something illegal and they don't use any sort of sliding or damaging words such as illegal, but just mention the other company's work in passing and claim that theirs is superior or better, I'm not going to immediately assume that that means that the other company's work is illegal. And perhaps even their failure to say that it's illegal might cause me to assume exactly the opposite. In other words, well, they must not be infringing the patent because they would come out and say that. I mean, they're saying our patent is so broad and it's going to be needed on all these roadway projects, but they're not looking at me and saying, and you've hired applied right now, and they're working on a project for you and they're necessarily infringing the patent. So this is kind of, this is back to what this court said in Gilbane. You can't base a duty to defend on a cause of action that might have been asserted but for whatever reason was not asserted. There is some reason why Applied did not, in its counterclaim, come back and say, my competitors were told that I was infringing a patent. My competitors were told that I was acting illegally. Clearly, Applied knows what patent infringement is, and it knows what it is like to be accused of patent infringement because it addressed all of these issues in its answer to the complaint filed against it by your agency. I can't say my customers were told that they couldn't, that I couldn't perform that contract with them because they have the contract. It's almost inescapable that you're saying that that competitor is acting illegally. And yet the statements didn't even go that far. Well, I'm looking at 14, and it basically says if you let the contract forbid to anybody else, you're going to be violating my patent. I don't see how you'd get around that. Paragraph 14 of there. It says plaintiffs have falsely misrepresented to general contractors, VDOT and others, that the contracts, let forbid, are covered by the 831 patent, meaning the contract. Nobody else can satisfy that contract except us. I mean, I don't see how you'd escape that conclusion. That's a statement, again, that the patent is required. It's their opinion that the patent is necessary to these projects. Yes, but if somebody else undertakes to do the contract, they're going to violate our patent. Or they're managing without the patent. That's not what it alleges. Well, it doesn't really say either way. In fact, it just says they told everybody our patent, these projects are covered by our patent. So they never say that the projects were infringing. So it could be that the projects were covered, but they weren't infringing. They were using another process due to a disagreement about what processes are important or necessary. So the fact that they say the projects are covered by their patent, yes, one can imagine that this possibly means that the people performing these projects are actually using the patented process right now, and it's illegal and it's in violation. Or if you contract with anybody but us, you're going to violate our patent. That's basically what they're saying. And yet they never came out and said that. Well, I think they said it in Paragraph 14. Once again, though, they said our patent is necessary. They're saying in 14 our patent is necessary. You need our patent. It's covered by our patent. That's one way of saying basically our patent is superior. You need our patent for the uses required for the roads. That's not saying that everybody else also believes its use is required and that they're using it. In other words, they're going out trying to convince people that their patent is necessary for these projects. That doesn't mean that the people performing the work also believe the patent is necessary and are also using the patent. The people performing the work may be using some antiquated work. We've got your argument, Kim. Your end. Thank you. I believe I hear the same arguments that I've heard going back to the denial letters when we first requested a defense. Continental has just not focused on the salient fact that we're talking about a patent here. When we talk about a patent and we say, Mr. Department of Transportation, this bid requires the use of this process, and that process is patented to me. I do not see how it can be argued that that does not disparage the goods and services of every other competitor who is . . . That's not the same as saying somebody else is illegally infringing on my patent. There's no allegation that that was said, is there? Yes. Even more compelling for me, if I'm sitting at the VDOT or anyplace else, I don't know if I'm taking legal advice from somebody who's trying to get a contract with me. If somebody alleges that someone else is infringing on a patent, it's not like somebody's saying somebody's stealing money, where it's pretty clear that's against the law. Patent infringement is a very discreet area of the law. There's all this litigation about what constitutes infringement or not, and I can't imagine somebody sitting up at VDOT getting patent infringement advice from Eurotech. Well, I'm not suggesting that they would be looking to Eurotech for advice, but what I am suggesting is that when we look at the allegations, which is what we're looking at, when we're looking at the four corners of the counterclaim, that's the allegation is that whether or not they're taking advice or not, but the allegation is that's chilling the market and costing me bids. And that, to me, is clear disparagement. It's not . . . It's not disparagement. It's monopoly. It may be monopoly. It may be illegal. It may be a lot of things. It's not necessarily disparaging. I just respectfully disagree, Your Honor. I think you have said they cannot provide services that I can provide. Or the services they are presently providing are being applied. Yes. They also say, and they are presently doing something that they cannot do without violating my patent, and I believe that's the same as saying that it is illegal. I also wanted to very briefly . . . I'd probably say to you, why don't you make them stop then? I mean, I guess it's neither here nor there, I guess, but I just don't know I'm going to be sitting somewhere talking to Eurotech trying to figure out what they think constitutes patent infringement and letting that influence who I enter into it. All I can say is that's what was alleged. All right. That it was intimidating customers. And, of course, it can lead to you being sued as using the infringing product in certain circumstances. I also wanted to go back for just a moment. If you look at the Lanham Act allegations, the Lanham Act count, it says misrepresentation, it says falsity, but it doesn't say intentionally or knowingly in that, even in the face of . . . Could you speak to the Birmingham case? Is this what you're going to? No. Exclusion? I'm sorry. So she said that, well, if you look at it, in fact, you've been over-specific. You've so disparaged them that it was a campaign of intentionality to disrepute them to say what they're doing is illegal. But so the alternative argument they're making is not that it's not disparaging, but that instead it was so concerted and focusedly disparaging as to illegality that it wouldn't be covered. And she said there's just that one stray clause or phrase in paragraph 22 that could imply . . . You understood that secondary argument? Your Honor, in all fairness, I was not able to hear my colleague's argument very well at all. I just couldn't hear it. Well, go ahead and make your point then. I interrupted. No. Actually, I've just about made it. I just wanted to say that not only do we have the American Assurance case, but we also have the fact that if you look at the Lanham Act claims in and of themselves, they do not . . . they can be proven without proving intent or willfulness. And so, respectfully, I'd ask that this Court reverse the trial judge's decision and send this back for a hearing on damages. Thank you, Your Honor. That will conclude the arguments.